UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| SHERRY BLACK, | CIVIL ACTION NO. 5:14-187-KKC |
| Plaintiff, | |
| V. | OPINION & ORDER |
| CROWE, PARADIS, & ALBREN, LLC, THE ADVOCATOR GROUP, LLC, and JOHN DOE(S) ("UNKNOWN DEFENDANTS"), | |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

Plaintiff Sherry Black brought this action in Fayette Circuit Court in Lexington, Kentucky on April 10, 2014. In her complaint she seeks class action status for a variety of claims, including legal malpractice, breach of fiduciary duty, fraudulent omissions, multiple violations of the Kentucky Consumer Protection Act, and breaches of the implied covenant of good faith and fair dealing. The defendants removed the matter to this Court on May 14, 2014, alleging subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Following the timely notice of removal, Black filed a motion to remand the action back to state court. She submits that the defendants have failed to establish the minimum $5,000,000 amount-in-controversy requirement for removal under CAFA. For the following reasons, her motion to remand will be denied.

Insurance carriers such as Metropolitan Life Insurance Company ("MetLife") provide long-term disability coverage for individuals like Sherry Black. As part of this coverage, MetLife assists its insured members with their applications for Social Security Disability ("SSD") benefits by referring them to the defendants, who in turn provide representation for

the individuals as they pursue their SSD claims. According to Black's complaint, however, the defendants failed to disclose a material conflict of interest in representing these SSD claimants. Black alleges that the defendants provide a variety of corporate services to MetLife, which includes, among other things, overpayment facilitation. Through this arrangement, the defendants receive a fee proportional to the amount of funds their SSD clients repay MetLife as a result of prior overpayment. Black contends that this arrangement poses a direct conflict of interest with the defendants' representation of their SSD clients, and one that was never disclosed.

Significantly, Black seeks class certification for "hundreds of members" who have been harmed by the defendants' conduct. (Complaint, DE 1-1, ¶ 62). She describes the class as "consisting of Kentucky residents who are current and prior clients of Defendants and were referred by LTD [long-term disability] insurance carriers to Defendants for assistance in applying for SSD benefits." (Complaint, DE 1-1, ¶ 61). Moreover, Black advises the Court that her claims against the defendant "are typical of the claims or defenses of the class." (Complaint, DE 1-1, ¶ 64).

The proposed class action looms large over the instant motion to remand because CAFA creates a different set of requirements for federal subject-matter jurisdiction than those for an individual suit. Under CAFA, defendants wishing to remove the action to federal court must establish three things: (1) that the class consists of 100 or more members; (2) that at least one plaintiff is diverse from at least one defendant; and (3) that the *aggregate* amount in controversy exceeds $5,000,000. *See* 21 U.S.C. § 1332(d). Black concedes that the first two of these requirements are clearly met. She disputes, however, the defendants' claim that the aggregate amount in controversy is greater than $5,000,000.

In removing this matter to federal court, the defendants acknowledge that they bear the burden of proving the jurisdictional requirements by a preponderance of the evidence. *See Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 572 (6th Cir. 2001). To do this, the defendants properly focus on the allegations as they are set forth in the complaint. *See Shupe v. Asplundh Corp.*, Civ. Action No. 5:12-CV-286-KKC, 2013 WL 647504, at *2 (E.D. Ky. Feb. 21, 2013) (citing *Hayes*, 266 F.3d at 573) ("To determine the amount in controversy, the Court first looks to the Complaint."). Courts may also look to the allegations in the Notice of Removal, within which the defendants should set forth "specific facts supporting the assertion that the amount in controversy exceeds the amount required by the statute." *Id.* (quoting *Suwala v. Progressive Ins. Co.*, Civ. Action No. 2005-135, 2005 WL 2076490, at *2 (E.D. Ky. Aug. 25, 2005)). The relevant question for the Court is whether a "fair reading" of the complaint makes it more likely than not that damages exceed $5,000,000. *See id.*

In accordance with Kentucky Rule of Civil Procedure 8.01, Black did not make a specific numerical demand in excess of the state's jurisdictional requirements. She states only that her claim is believed to exceed the minimum $5,000 requirement to be filed in circuit court, but less than the $75,000 that would subject her claim to diversity jurisdiction.[1]

The defendants, however, provide further evidence to demonstrate that a fair reading of the complaint makes it likely that the amount in controversy exceeds $5,000,000. In their

---

[1] The plaintiff attempts a sleight of hand in her motion to remand regarding the amount at stake in her suit. In her complaint, she alleges that the amount in controversy exceeds $5,000, the amount of her individual claim is no more than $75,000, and the amount in controversy for the class is unknown. (Complaint, DE 1-1, ¶ 8). She argues that the $5,000 does not attach to her individually, but the claim in the aggregate. But if this is true, the only number by which the defendants can assess the amount in controversy is "no more than $75,000," and a fair reading of the complaint would permit the defendants to calculate her individual claim at $74,999. Despite this, the defendants have generously interpreted the complaint using the lowest number provided by the plaintiffs, and the Court will do so as well.

Notice of Removal, they attached a declaration of Melissa Prudente, Chief of Staff for The Advocator Group, LLC. Prudente states that the two defendant corporations "have been hired to assist with more than 1,300 SSDI claims in the Commonwealth of Kentucky." (Declaration of Melissa Prudente, DE 1-2, ¶ 4). Even if the Court assumes the *lowest* estimate of Black's claim ($5,000), the aggregate amount in controversy for the 1,300 putative class members would total $6,500,000—well above CAFA's minimum requirement.

Black's sole argument in favor of remand is that the one-year statute of limitations will bar a significant amount of the putative class members from proceeding with their claim, and the 1,300 claimants is therefore an inaccurate basis on which to calculate the amount in controversy. This argument is in error.

The central problem with Black's position is that it impermissibly relies on an affirmative defense that constricts the class size beyond what is alleged in the complaint. Her attempt to use the statute of limitations to reduce the size of the alleged class falls outside the scope of the Court's jurisdictional inquiry. "Whereas a court considering a summary judgment motion could examine defenses, such as . . . the application of a statute of limitations, a court considering a dismissal for failure to meet the amount in controversy requirement cannot." *Kovacs v. Chesley*, 406 F.3d 393, 396 (6th Cir. 2005) (describing the jurisdictional test as only a "superficial" examination of the merits). Black's complaint alleges that the proposed class includes "Kentucky residents who are current and prior clients of Defendants and were referred by LTD insurance carriers to Defendants for assistance in applying for SSD benefits." (Complaint, DE 1-1, ¶ 61). The class definition does not restrict the class to only those who were clients of the defendants within the last year; it attaches no time-period limitation at all. The Court will not look past the plaintiff's

own description of the class—relying on the *potential* application of a statute of limitations—in order to assess whether the amount in controversy has been met.

But even if the Court were to consider the plaintiff's proposed limitation, her analysis does not hold up to closer scrutiny. She submits that because a one-year statute of limitations would apply, the Court should evaluate the amount in controversy by assuming the class size equals a yearly average of the defendants' clients. She calculates this average, not by looking at the actual number of clients the defendants have each year, but by taking the total number of clients and dividing it by the total number of years the defendants have been in business—a method that ignores the possibility of clients who span multiple years. Thus, because the defendants have been assisting SSD clients since 2006, they have averaged only 162 clients per year, and this should be—or so Black argues—the class size the Court relies on.

Why the Court should adopt this approach to calculating the class size is a mystery. Black herself states that the defendants began representing her in 2009, and the representation continued through 2013. (Complaint, DE 1-1, ¶ 42). If she is a typical representative of the class, the Court can assume that most class members experienced such prolonged representation. Thus, even if the Court were inclined to apply her make-shift version of the statute of limitations, an annual average of the defendants' clients calculated in this manner would be inappropriate as these clients do not appear to limit their relationship with the defendants to yearlong terms. Setting the class size at 162 to determine the amount in controversy would be more than arbitrary: it would directly contradict the allegations in Black's own complaint.

It is clear that a fair reading of the complaint makes it more likely than not that the aggregate amount in controversy exceeds $5,000,000. Black pleads that the class consists of

"Kentucky residents who are current and prior clients of Defendants and were referred by LTD insurance carriers to Defendants for assistance in applying for SSD benefits." (Complaint, DE 1-1, ¶ 61). The defendants have supplied evidence indicating that their clients in Kentucky number more than 1,300. If the Court assumes only the *minimum* amount that Black claims her case is worth—$5,000—the amount in controversy would total $6,500,000. This amount would not even include the fact that Black's complaint suggests her individual claim might climb as high as $74,999. Accordingly, the defendants have demonstrated that the amount in controversy is likely to exceed $5,000,000 on a fair reading of the complaint, and the jurisdictional requirements under CAFA have been met.[2]

\* \* \*

For the above-stated reasons, **IT IS ORDERED** that

1. The motion for leave to file a sur-reply (DE 14) is **GRANTED**;

2. The motion to remand (DE 8) is **DENIED**; and

3. The motion for a hearing (DE 15) is **DENIED AS MOOT**.

Dated August 13, 2014.

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

---

[2] Ordinarily, once the defendant has demonstrated that the amount-in-controversy requirement has been met, the burden shifts back to the plaintiff to prove that it is legally impossible for her to recover that much. *See Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405, 409 (6th Cir. 2008). In this case, Black makes no attempt to prove that recovery of $5,000,000 or more is legally impossible, instead resting on her argument that the defendants have not satisfied the initial jurisdictional requirements.